## CARRIER ENTITLED TO COLLECT CHARGES ONLY ON SHIPMENTS AUTHORIZED BY THE SHIPPER.

Court of Appeals for Franklin County.

### MAYNARD COAL CO. v. CHICAGO, KALAMAZOO & SAGINAW RAILWAY COMPANY.*

Decided, October 20, 1915.

*Railways—Shipments en Route Should be Stopped on Notice from Shipper—Connecting Carrier Not Entitled to Charges for Carrying Shipment After it Was Ordered Stopped—Authority of Forwarding Carrier—Demurrage.*

1. Where a shipper notifies a carrier to stop certain carload shipments at a designated point *en route* and to hold for further shipping orders, such carrier is bound to do so, if not an unreasonable interference with the carrier's business.
2. A connecting carrier receiving goods for transportation by virtue only of the authority of the previous carrier, is bound to take notice of the authority of the latter at the time the goods are so received.
3. A carrier directed by the shipper to make a certain delivery of the goods shipped is bound to do so promptly, and is not authorized to hold the same because of a controversy with associated carriers over a division of the freight charges and to charge the demurrage occasioned thereby to the shipper.

*Charles J. Pretzman,* for plaintiff in error.
*Wilson & Rector,* for defendant in error.

---

*Motion to require the Court of Appeals to certify its record in this case overruled by the Supreme Court, December 11, 1915.

ALLREAD, J.

The Chicago, Kalamazoo & Saginaw Railway Company brought suit in the court below against the Maynard Coal Company to recover the sum of $1,749 with interest, upon an account for switching charges and car service (demurrage) upon certain shipments of coal in carload lots during the months of April and May, 1912.

Upon the issues made by the pleadings and the trial statement of counsel for the coal company, the court instructed the jury to return a verdict in favor of plaintiff for the full amount claimed. This was done and a judgment was rendered upon the verdict. A motion for a new trial was overruled and bill of exceptions taken embodying the statements of counsel.

Error is prosecuted to this court.

The coal company rests largely upon the second defense of its second amended answer. This defense, in brief, is that the coal company delivered certain carloads of coal to an initial carrier for through shipment to Kalamazoo, Michigan; that the initial carrier delivered the coal to the Lake Shore & Michigan Southern Railway Company as an intermediate carrier, which in turn delivered the same to the Chicago, Kalamazoo & Saginaw Railway Company for carriage and final delivery; that the coal company, on April 11, 1912, notified the Lake Shore & Michigan Southern Railway Company to deliver no more of said shipments to the Kalamazoo company, but to retain the same for further shipping orders. Thereafter the coal company sold said coal to the Lake Shore & Michigan Southern Railway Company and ordered the Kalamazoo company to deliver said coal to the Lake Shore & Michigan Southern Railway Company, but that, owing to a controversy between the Kalamazoo company and the Lake Shore company as to division of freight charges, the Kalamazoo company refused to deliver said coal as directed, but continued to hold the same subject to demurrage charges until the coal company, in order to procure the delivery of the coal to the Lake Shore company, sent a telegram agreeing to pay the demurrage and car-service charges of the Kalamazoo company.

The coal company further avers that the initial carrier and the Lake Shore and Kalamazoo companies were conducted as a single system, for the purpose of traffic, known as the New York Central Lines. Issue was joined in the reply by general denial.

It appears from the statement of counsel that it was proposed to be shown that notwithstanding the order of April 11, 1912, the Lake Shore company continued to deliver the shipments of coal to the Kalamazoo company according to the original order of shipment. Counsel also offered to show that after the order of the coal company to re-deliver the coal to the Lake Shore company, the Kalamazoo company retained the same on account of a controversy between it and the Lake Shore Company as to the division of the freight rate, and that the coal company was compelled to agree to pay the switching and demurrage charges in order to obtain a delivery of the coal. The offer in the telegram of May 14 is void under the common law unless independent thereof the charges were legal, and is equally void under the present regulatory statutes.

It is not denied that the Kalamazoo company performed the services for which the charges were made. The only question is whether it was justified under the facts of the case in the performance of such services and charging the same to the coal company. We are unable to agree with the trial court that the Kalamazoo company was justified in charging the coal company with the demurrage after it had received notice to deliver the same to the Lake Shore company. It was clearly the duty of the Kalamazoo company to make such delivery promptly upon receiving notice to that effect, and it had no right because of a controversy between it and the Lake Shore company to hold the shipment and charge demurrage to the shipper.

Whether the Lake Shore company was bound by the notice of April 11, 1912, to hold further shipments subject to the order of the shipper and whether the Kalamazoo company was bound by such notice are much more difficult questions.

The case of *Cleveland & Pittsburgh Rd. Co.* v. *Sargent,* 19 Ohio St., 438, holds:

"Where a party delivers to a railroad company chattels to be transported from the point of delivery to another designated point on its line, and pays the charges for such transportation in advance, he has the right as against the company, to resume the exclusive possession and control of his chattels before they have reached the destination named in the bill of lading, whenever and wherever he can do so without unreasonable interference with the business of the company."

No issue is tendered as to unreasonable interference. The reply is a general denial. We therefore conclude that the question of interference with the carrier's business is not presented.

In the absence of a claim of unreasonable interference we think it follows that it was the duty of the Lake Shore company, upon receipt of the notice of April 11, to hold all shipments then or thereafter in its possession in obedience to said notice.

It is claimed, however, that the Kalamazoo company was not bound by the notice to the Lake Shore company and was justified in accepting the shipments tendered by the latter and in forwarding the same under the original contract with the initial carrier.

The pleadings and proffer of evidence are to the effect that the contract was made by the shipper with the initial carrier for through shipment. No routes beyond the initial carrier's line were designated by the shipper and no special contract was made by the shipper for carriage over the Kalamazoo company route.

The initial carrier was, therefore, authorized by the shipper's contract to carry over its own line to a convenient connecting point and thence over the lines of connecting carriers.

The initial carrier in the present case made its delivery to the Lake Shore company as the first connecting carrier. The latter company, not being able or desiring to complete the shipment, delivered the same to the Kalamazoo company as a connecting carrier for final delivery. The Kalamazoo company therefore received the shipment from the Lake Shore company as intermediate carrier. The right of the Kalamazoo company to receive the shipment, forward it and make final delivery rested upon the special authority of the Lake Shore company under

the original contract of shipment. The Lake Shore company was not a general agent of the shipper, but acted under special authority. When that special authority was revoked by the notice of April 11, its delivery to the Kalamazoo company was wholly unauthorized so far as the shipper was concerned. The Kalamazoo company, therefore, had no authority after the notice of April 11 to the Lake Shore company to complete the shipment and make any charges in connection therewith against the shipper.

It is urged that notice should have been given also to the Kalamazoo company, but it must be kept in view that the Kalamazoo company was not designated by the shipper and it does not appear that the shipper knew that that company would be asked to make the shipment. It would be an extraordinary burden to require the shipper to notify all carriers who might possibly be asked to carry the goods.

We think the more reasonable rule is to require the connecting carrier to take notice of the authority of the forwarding carrier, and especially should this be the rule in cases where all the carriers involved are associated together in one general system.

It is urged that when a public carrier receives goods and performs a service, such carrier is entitled to charge against the shipper the regular tariff rates, regardless of authority from the shipper to make the shipment or perform the service; in other words, that the charges follow inexorably from the fact of service. This would be a harsh and unjust construction. We think a more reasonable interpretation of the statute regulating carriers would be to hold that they apply only to shipments duly authorized by the shipper.

The trial court, therefore, erred in ignoring the defense in its entirety and in instructing a verdict for the full amount of the plaintiff's claim.

Judgment reversed and cause remanded for a new trial.

FERNEDING, J., and KUNKLE, J., concur.